# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# AKRON DIVISION

| | |
|---|---|
| **MORGAN MILLER**, | Civil Action No. |
| Plaintiff, | JUDGE: |
| v. | |
| **VILLAGE OF RICHFIELD, OHIO**, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| Defendant. | **JURY DEMAND ENDORSED HEREIN** |

## I.  NATURE OF THE ACTION

1. Officer Morgan Miller ("Plaintiff" or "Officer Miller"), brings this action against the Village of Richfield, Ohio ("Defendant" or "the Village") for violations of the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. § 2000gg *et seq.*, Title VII of the Civil Rights Act, as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e *et seq.*, and the Ohio Laws Against Discrimination ("OLAD"), R.C. 4112.

2. Officer Miller is a dedicated law enforcement officer, having served for eight years. At the time she announced her pregnancy in January of 2023, she had been an employee of the Richfield Police Department for two years with an exemplary performance record, receiving multiple commendations for her work with the Police Department and the community.

3. In spite of this, when Officer Miller sought reasonable accommodations to continue serving while pregnant, the Village refused to provide her the accommodations she needed to remain healthy and earn a paycheck.

1

4. The Village persisted in refusing to accommodate Officer Miller, even though suitable work consistent with Officer Miller's limitations remained readily available. In fact, the Village pulled Officer Miller off of a partially-completed project that would have provided her with work for the duration of her pregnancy and instead forced her onto an extended, unpaid leave of absence.

5. Moreover, the Village has a policy and practice of accommodating non-pregnant officers similar in their ability or inability to work, yet refused to extend the same accommodations to Officer Miller.

6. Ultimately, the Village forced Officer Miller to take leave from work when other reasonable accommodations were available that would not have caused an undue hardship. As a result, Officer Miller was forced onto unpaid leave at a time when earning a livelihood was more critical than ever to her growing family.

7. Defendant thereby violated Officer Miller's rights by denying her reasonable accommodations and forcing her to take leave, both of which are prohibited by the PWFA, a newly enacted law that went into effect in June 2023. It further violated her rights by discriminating against her because of her pregnancy in violation of the PDA and OLAD.

## II.     JURISDICTION AND VENUE

8. This Court has original jurisdiction over Plaintiff's PDA and PWFA claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

9. This Court has supplemental jurisdiction over Plaintiff's OLAD claims arising from the same case or controversy pursuant to 28 U.S.C. § 1367(a).

10. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and L.R. 3.8(a) because the claims arose in Summit County, where the Village employed Plaintiff as an Officer in

the Richfield Police Department and where she performed the job duties the Village assigned to her.

### III. CONDITIONS PRECEDENT

11. Plaintiff timely filed a charge of discrimination against the Village with the U.S. Equal Employment Opportunity Commission ("EEOC") on July 6, 2023. This charge was dual-filed with the Ohio Civil Rights Commission.

12. Plaintiff received the attached Determination of Probable Cause from the EEOC on June 27, 2024. *See* **Exhibit A.**

13. The EEOC transferred Plaintiff's charge to the U.S. Department of Justice for further investigation, which issued the attached Notice of Right to Sue less than ninety days ago. *See* **Exhibit B.**

14. Plaintiff awaits the Notice of Right to Sue from the Ohio Civil Rights Commission.

### IV. PARTIES

15. Officer Morgan Miller ("Plaintiff" or "Officer Miller") is a citizen of the State of Ohio, who was employed by the Village as a Police Officer from September 7, 2021 to October 2024, and, at all times material to this complaint, was ready, willing, and able to competently perform the job duties the Village assigned to her in accordance with her pregnancy-related limitations.

16. Village of Richfield ("Defendant" or "the Village") is a municipality located in Summit County, Ohio, which, at all times material to this complaint, employed more than fifteen employees, fitting the definition of employer as that term is defined in Title VII, the PWFA, and the OLAD.

## V.     FACTUAL ALLEGATIONS

17. At the time of the events leading to this complaint, the Village had assigned Officer Miller to road duty, where her regular duties primarily consisted of patrolling in a car and responding to calls for police assistance as they came in.

18. Officer Miller notified her employer of her pregnancy on January 17, 2023, when she was approximately four weeks pregnant.

19. In the same communication, Officer Miller informed her employer about several pregnancy-related restrictions, including a limit on lifting weight over 25 pounds.

20. However, Officer Miller did not request any modifications to her job duties, as she did not believe her limitations were inconsistent with her performing her job as an Officer.

21. The PWFA prohibits employers from forcing an employee to accept an accommodation without first engaging in the interactive process.

22. In spite of this, the Village took unilateral action upon learning of Officer Miller's pregnancy, before ever speaking with Officer Miller about her restrictions and needs. Police Chief Mike Swanson, acting on behalf of the Village as Officer Miller's employer, immediately placed Officer Miller on administrative leave.

23. Officer Miller experienced immediate distress at being unexpectedly forced onto leave, including stress and uncertainty about the future of her job with the Police Department.

24. On January 20, 2023, the Village finally met with Officer Miller to discuss their reaction to her pregnancy and related restrictions. In attendance at the meeting were several representatives of the Village, including Chief Swanson, Assistant Chief Paul Fister, and Mike Zhelesnik, an attorney employed by the Village. Jim Wagner, a representative of Officer Miller's union (the Fraternal Order of Police or "F.O.P."), also attended this meeting at Officer Miller's request.

25. The Village did not come to this meeting prepared to accommodate Officer Miller, making it incumbent upon her to suggest potential accommodations. Officer Miller presented multiple ideas for accommodations that would enable her to return to work, including several accommodations that would have allowed her to continue doing her regular duties.

26. Additionally, Officer Miller suggested alternative duties she could do, including taking crash reports to assist road duty officers, handling delinquent tow slips, entering charges and tickets into the Police Department's computer system, taking phone calls and reports at the station, working in the detective bureau, and completing required trainings. Many of these duties were already part of her role, and Officer Miller believed that she could continue to be useful and fully occupied as an Officer even if not assigned to road duty.

27. Mr. Zhelesnik uniformly rebuffed all of Officer Miller's suggestions for potential accommodations without suggesting any alternatives that would enable Officer Miller to return to the job.

28. Mr. Zhelesnik also made multiple disparaging comments during this meeting that reflected his animus against Officer Miller because of her pregnancy, pregnancy-related limitations, and assertion of her right to accommodations; including calling Officer Miller "a liability" and describing her as "difficult."

29. Unsurprisingly, the meeting ended without the Village agreeing to any of the multiple avenues for accommodation Officer Miller had suggested, and Officer Miller was again sent home on a forced, unnecessary leave of absence.

30. On or about January 26, the Village called Officer Miller to another meeting to discuss her requests for accommodation, where she met with Mr. Zhelesnik, Chief Swanson, and Mr. Wagner.

31. At this meeting, Officer Miller continued to raise new suggestions for ways to accommodate her restrictions. She was again met with refusal.

32. Among other suggestions, Officer Miller raised the possibility of temporary transfer to a Dispatcher role as an accommodation, as she understood that the Dispatch Department needed additional personnel at the time.

33. At this time, Officer Miller possessed all the necessary qualifications required for applicants to the Dispatcher role.

34. Rather than offer Officer Miller transfer into the Dispatcher role as a reasonable accommodation, Mr. Zhelesnik told Officer Miller that she would only be considered for the Dispatcher role if she resigned as an Officer and applied to become a Dispatcher.

35. By resigning as an Officer, Officer Miller would have lost all accrued seniority and benefits. She would also have had to reapply for an Officer position after her pregnancy-related limitations ended and there would have been no guarantee she would be accepted back.

36. Moreover, the Village did not offer a guaranteed reassignment to the Dispatcher role, despite her qualifications, Officer Miller was only offered consideration as an applicant.

37. Under both established precedent and the PWFA regulations, 29 C.F.R. § 1636.3(i)(2), temporary reassignment to a vacant position that the employee is qualified for is among the reasonable accommodations employers must offer to employees absent undue hardship. Making an employee apply or compete for this reassignment is not an accommodation, and requiring them to surrender their previous position in exchange for temporary reassignment is retaliatory behavior likely to dissuade an employee from seeking accommodations.

38. Officer Miller understandably declined the suggestion that she resign as an Officer, unwilling to halt her career trajectory and surrender all job security.

6

39. On February 15, 2023, almost a month after she was initially forced onto an unwanted leave of absence, the Village brought Officer Miller back to work.

40. Upon her return, the Village assigned Officer Miller to modified duty. She was assigned tasks that had always been part of her job as an Officer and that had been available for her to perform during the entirety of her forced leave. Many of these tasks were among the duties she had proposed performing as a reasonable accommodation nearly a month before during her first meeting with the Village, such as handling tow slips, taking complaints over the phone and at the station, working in the jail, and handling outstanding parking/traffic violations.

41. Immediately after Officer Miller returned to work, however, Chief Swanson told her that the Village would provide her with this accommodation for an arbitrary maximum of four weeks.

42. Upon information and belief, this time limitation was in no way related to the availability of modified duty for Officer Miller, as the Village had ongoing work that Officer Miller could perform with her pregnancy-related restrictions.

43. Moreover, it would not have imposed an undue hardship on the Village to allow Officer Miller to be on modified duty for longer than four weeks.

44. Instead, Chief Swanson told Officer Miller that the Village could only accommodate her for four weeks due to its "past practice."

45. Contrary to this statement, however, the Village had provided multiple other Officers with modified duty for periods longer than four weeks.

46. For example, at or around the same time that Officer Miller was on light duty, the Village gave Officer Jeff Michel almost six weeks of modified duty.

47. Prior to this, the Village gave another officer, Officer Robert Gaydosh, six weeks of modified duty due to an off-the-job injury.

7

48. Moreover, as per their contract with the F.O.P., the Village has a policy of giving up to six months of modified duty to officers injured in the line of duty.

49. Shortly after her return, the Village also assigned Officer Miller to a project organizing and cataloguing police department records. She continued assisting with other tasks in the Police Department as needed.

50. Upon information and belief, the Village had a large volume of boxes and records that needed review, and completing the records project would have taken Officer Miller considerably more time than she had before her anticipated due date.

51. On March 3, 2023, the Village again called Officer Miller into a meeting to discuss her accommodation.

52. In attendance at the meeting were Richfield Mayor Michael Wheeler and Benjamin Chojnacki, the Village's Law Director. Also in attendance was Mike Piotrowski, an attorney for the F.O.P., who attended this meeting to advocate for continued accommodations for Officer Miller.

53. Upon information and belief, at this meeting Mr. Piotrowski advised the Village that allowing Officer Miller to continue performing available modified duty for the duration of her pregnancy would not violate the Village's Collective Bargaining Agreement with the F.O.P. or give rise to a meritorious grievance.

54. Despite the law and the F.O.P.'s position, the Village refused to continue providing Officer Miller with a reasonable accommodation absent a Memorandum of Understanding ("MOU") between the Village and the F.O.P.

55. Officer Miller and the F.O.P. did not object in principle to entering into a MOU with the Village, even though this agreement was a legally unnecessary and gratuitous condition imposed by the Village on Officer Miller's continued accommodation.

56. However, the MOU the Village drafted contained language that was unacceptable to Officer Miller and her colleagues, including language in which the Village refused to provide modified duty beyond four weeks to any F.O.P. member in future (irrespective of their entitlement to accommodations under law) and allowing the Village to put Officer Miller back on leave at the end of the records project despite of the ongoing availability of other accommodations. As a result of this attempt to restrict the rights of Officer Miller and all officers who may need accommodations in the future, the MOU vote failed.

57. Upon information and belief, shortly after the MOU failed to pass, Mr. Piotrowski called Mr. Chojnacki and reiterated that, notwithstanding the vote, the F.O.P. had no objection to Officer Miller's accommodations. Mr. Piotrowski asked that the Village continue to accommodate Officer Miller.

58. The Village refused.

59. On April 3, 2023, the Village sent Officer Miller a letter rescinding her accommodation and informing her that she would be placed on administrative leave beginning the very next day. When Officer Miller inquired about what would happen when the PWFA went into effect on June 27, 2023, the Village replied that they did not intend to change their stance on her accommodations.

60. On June 27, 2023, Officer Miller reiterated her request for accommodations through counsel, indicating her willingness to continue working and repeating her request for temporary transfer to the Dispatcher role. The Village once again refused to provide Officer Miller with accommodations that would enable her to return to work.

61. Officer Miller remained on a forced leave of absence until she gave birth to her daughter on August 13, 2023. Because the Village had refused to accommodate her, her small bank of accrued paid time off was insufficient to cover her extended leave, and as a result she went

9

without income for most of her leave and childbirth recovery, causing significant and unnecessary financial strain on her family.

62. Officer Miller resigned from her position in October 2024, but remains a sworn officer and has continued her career in policework. She may seek reemployment with the Village in future.

## VI. STATEMENT OF CLAIMS

### COUNT ONE:
### Failure to accommodate pregnancy in violation of the
### Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg *et seq.*

63. Plaintiff incorporates the allegations contained in the previous paragraphs of the Complaint as if fully restated herein.

64. Officer Miller was a qualified employee as defined by the PWFA, as she was able to perform the essential functions of her position with or without accommodation, or any inability to perform an essential function was for a temporary period and she would have been able to perform the essential function in the near future.

65. The PWFA requires the Village to provide reasonable accommodations to qualified employees for known limitations related to pregnancy.

66. Officer Miller informed the Village of her pregnancy-related limitations and requested accommodations.

67. The Village failed to promptly provide Officer Miller with a reasonable accommodation, and then revoked the accommodations they had provided.

68. The Village could have provided Officer Miller with reasonable accommodations without incurring undue hardship.

69. The Village's actions were in violation of the PWFA.

70. As a direct and proximate result of these actions, Officer Miller suffered and will continue to suffer harm, including but not limited to loss of past wages and benefits; emotional, and physical distress; and the attorneys' fees and costs of bringing this action.

**COUNT TWO:**
**Requiring a qualified employee to take leave when another**
**reasonable accommodation could have been provided in violation of**
**the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg** *et seq.*

71. Plaintiff incorporates the allegations contained in the previous paragraphs of the Complaint as if fully restated herein.

72. The PWFA prohibits the Village from requiring a qualified employee to take leave, whether paid or unpaid, if another reasonable accommodation can be made for the employee's known limitations related to pregnancy.

73. The Village forced Officer Miller onto administrative leave immediately after receiving notice of her pregnancy-related limitations rather than first engaging in the interactive process.

74. Officer Miller remained on unwanted leave for a month before the Village provided her with accommodations that they could have provided from the beginning.

75. After revoking these accommodations, the Village again forced Officer Miller onto administrative leave even though they could have continued to accommodate her pregnancy without causing undue hardship.

76. The Village's actions were in violation of the PWFA.

77. As a direct and proximate result of these actions, Officer Miller suffered and will continue to suffer harm, including but not limited to loss of past wages and benefits; emotional, and physical distress; and the attorneys' fees and costs of bringing this action.

## COUNT THREE:
### Discrimination on the basis of pregnancy in violation of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e *et seq.*

78. Plaintiff incorporates the allegations contained in the previous paragraphs of the Complaint as if fully restated herein.

79. As a pregnant employee, Officer Miller was a member of a protected class under Title VII as amended by the PDA.

80. The Village was aware of Officer Miller's pregnancy, and refused to give her the same accommodations extended to officers similar in their ability or inability to work.

81. The Village also made discriminatory comments about Officer Miller's ability to remain on the job while pregnant and disparaged her advocacy for her own legal rights.

82. The Village also refused to extend their written modified duty policy as contained in their Collective Bargaining Agreement to Officer Miller, denying her the same accommodations that the Village provides under this policy to other officers similar in their ability or inability to work.

83. The Village's actions were in violation of the PDA.

84. As a direct and proximate result of these actions, Officer Miller suffered and will continue to suffer harm, including but not limited to loss of past wages and benefits; emotional, and physical distress; and the attorneys' fees and costs of bringing this action.

## COUNT FOUR:
### Discrimination on the basis of pregnancy in violation of the Ohio Law Against Discrimination

85. Plaintiff incorporates the allegations contained in the previous paragraphs of the Complaint as if fully restated herein.

86. As a pregnant employee, Officer Miller was a member of a protected class under the OLAD, R.C. 4112.09(B).

87. The Village was aware of Officer Miller's pregnancy, and refused to give her the same accommodations extended to officers similar in their ability or inability to work.

88. The Village also refused to extend their written modified duty policy as contained in their Collective Bargaining Agreement to Officer Miller, denying her the same accommodations that the Village provides under this policy to other officers similar in their ability or inability to work.

89. As a direct and proximate result of these actions, Officer Miller suffered and will continue to suffer harm, including but not limited to loss of past wages and benefits; emotional, and physical distress; and the attorneys' fees and costs of bringing this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this court:

a. Declare Defendant's acts and omissions complained of herein violate the PWFA, Title VII as amended by the PDA, and the OLAD.

b. Direct Defendant to pay the Plaintiff actual damages, including back pay and compensation for past and future lost benefits; actual, compensatory, and punitive damages; and pre-judgement interest;

c. Enjoin Defendant from further discriminatory actions in violation of the PWFA, Title VII, and the OLAD, including by affirmatively ordering Defendant to modify their employment policies and practices to comply with the PWFA;

d. Award the Plaintiff reasonable attorneys' fees, costs, and expenses; and

    e.    Award such other relief as the Court deems just and proper.

DATED July 29, 2025　　　　　　　　　　Respectfully submitted,

*/s/ Robert E. DeRose*
Robert E. DeRose (Bar No. 0055214)
Anna R. Caplan (Bar No. 0104562)
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent St., Ste. 210
Columbus, OH 43219
Phone: 614-221-4221
Email: bederose@barkanmeizlish.com
　　　　acaplan@barkanmeizlish.com

Katherine Greenberg
*Motion for pro hac vice admission pending*
Chelsea Thompson
*Motion for pro hac vice admission pending*

**A BETTER BALANCE**
500 7th Avenue, 8th Floor
New York, NY 10018
Phone: 212-430-5982
Email: kgreenberg@abetterbalance.org
　　　　cthompson@abetterbalance.org

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff requests a trial by jury by the maximum number of jurors permitted.

*/s/ Robert E. DeRose*
Robert E. DeRose